[No. 9462.   Department One.   August 5, 1911.]

The State of Washington, *Respondent,* v.
Morris Falkenstine, *Appellant.*[1]

Intoxicating Liquors—Sales Without License—Statutes—Construction. Under Rem. & Bal. Code, § 6269, providing that any person selling intoxicating liquor on any steamboat shall pay an annual state license fee in addition to the license fee fixed by any city, town or county where such liquor is sold, and Id., § 6263, giving the county commissioners of each county the sole and exclusive authority to regulate the sale of spirituous liquors outside of the corporate limits of a town, a license is required from each county in which the steamboat sells intoxicating liquors; and the same is not excused by a state or by a Federal license.

Intoxicating Liquors—License—Reasonableness — Prohibition. The requirement that a steamboat secure a county license for the sale of intoxicating liquors in each county through which it passes is not objectionable because it is unreasonable or prohibitory, as the legislature has the right to prohibit the sales.

Appeal—Harmless Error—Admission of Evidence. Upon a prosecution for maintaining a nuisance by the sale of liquors without a license, error in admitting evidence to show that the liquor was kept in the place is harmless where there was no dispute upon that question.

Appeal from a judgment of the superior court for Kitsap county, Yakey, J., entered November 19, 1910, upon a trial and conviction of maintaining a nuisance.   Affirmed.

*Ira Bronson* and *Byers & Byers,* for appellant.

*Thomas Stevenson* (*Boyd P. Doty,* of counsel), for respondent.

Mount, J.—The appellant was convicted upon a charge of maintaining a nuisance, which consisted in selling intoxicat-

[1]Reported in 117 Pac. 254.

ing liquors in Kitsap county without having obtained a li-
cense from said county. He appeals from a sentence pro-
nounced upon a verdict of the jury.

It appears that the appellant was employed as a steward
on board the S. S. Kennedy, a steamship plying on Puget
Sound between Seattle, in King county, and Bremerton, in
Kitsap county. The ship maintained a bar at which intoxi-
cating liquors were sold. The appellant had charge of the
bar and the sale of the liquors. The company owning the
ship had procured a United States government license and
also a state license for the sale of liquors, but had not pro-
cured a license from Kitsap county for the year 1910. On
July 19 of that year, while the vessel was *en route* from
Seattle to Bremerton and when she was within Kitsap county,
appellant sold to three different parties each a bottle of beer,
an intoxicating liquor. The main question in the case is,
whether a steamboat operating within the state is required
to obtain a license from each county in which it sells intoxi-
cating liquors. The question was presented upon demurrer
to the information, and upon motion for a directed verdict in
favor of the defendant. The statute, Rem. & Bal. Code,
§ 6263, provides as follows:

"The board of county commissioners of each county in the
state of Washington shall have the sole and exclusive au-
thority and power to regulate, restrain, license, or prohibit
the sale or disposal of spirituous, fermented, malt, or other
intoxicating liquors outside of the corporate limits of each
incorporated city, incorporated town, or incorporated vil-
lage in their respective counties: Provided, that the annual
license fee for the sale of spirituous, fermented, malt, or other
intoxicating liquors shall, in no instance, be less than three
hundred dollars or more than one thousand dollars, which
said license fee shall be paid annually in advance to the
county treasurer, who shall pay ten per cent of the amount
into the general fund of the state treasury, thirty-five per
cent into the county school fund, and the remaining fifty-five
per cent into the general county fund: Provided further,
that no license shall be granted to sell spirituous, fermented,

malt, or other intoxicating liquors by said county commissioners within one mile of the corporate limits of any incorporated city, town or village."

The next section gives to cities and towns the exclusive authority to regulate or prohibit the sale of liquors within the corporate limits thereof. The next three following sections provide for the payment of the license fee and the giving of a bond by the applicants for the license. Then Rem. & Bal. Code, § 6268, provides:

"Nothing in this act shall be held or construed to allow any person, firm, or corporation to barter, sell, or otherwise dispose of any spirituous, malt, fermented or other intoxicating liquors without having first obtained a license therefor, as required by the provisions of this chapter, except as provided in section 6275 *infra*."

Section 6275 provides when druggists may sell without a license. Then § 6269 provides as follows:

"Every person, firm, or corporation selling any spirituous, fermented, malt or other intoxicating liquor, at any place within this state or upon any steamboat, steamship or other vessel plying upon the waters of the state or between places within the state or upon any dining-car, buffet-car, or other public conveyance in the state, shall pay for the privilege of so doing an annual state license fee of twenty-five ($25) dollars, in addition to the license fee fixed by any city, town, or county where such liquor is sold which sum shall be in addition to the amount now required to be paid to the state on account of any license for such purpose."

Section 6271 provides the method of obtaining the state license. Section 6269, *supra*, was a part of the act of 1907, which we held in *State v. Putnam*, 60 Wash. 386, 111 Pac. 239, was a revenue act solely for the state, but did not change the requirement that every person, firm, or corporation selling liquor within the state shall be obliged to obtain a license therefor from the cities where offered for sale, or from the county commissioners when offered for sale outside of the incorporated cities and towns.

Section 6269 seems too plain for construction. It says every person, firm, or corporation selling intoxicating liquors "at any place within this state or upon any steamboat . . . shall pay for the privilege of so doing an annual state license fee of twenty-five ($25) dollars, in addition to the license fee fixed by any city, town, or county where such liquor is sold." This does not mean that the state license fee shall authorize the sale of liquors without the local license fee, for it is clearly stated to be in addition to the local fee. A license from the United States government does not excuse one from obtaining a local state license. *Pierson v. State*, 39 Ark. 219; *Boyd v. State*, 80 Tenn. 687. So, likewise, the license from the state did not excuse the steamboat company from obtaining the local county license, because, by the very terms of the statute, the state license fee was fixed as additional to the local fee.

It is argued by the appellant that the legislature did not intend to require steamboats plying between places within this state, and which might pass through a dozen or more counties on its route, to obtain a license from each county through which such vessel passed, because such requirement would be unreasonable and prohibitory. We may concede that the provision may seem unreasonable and prohibitory, but the legislature had the right to prohibit in such cases, and when it has spoken, the language must be construed reasonably. If the legislature had intended to permit the sale of liquor upon steamboats plying between different places and through different counties for an annual license fee of $25, it would not have added "in addition to the license fee fixed by any . . . county where such liquor is sold." The provision is plain, and we are of the opinion, therefore, that the local county license was required in this case.

Appellant argues that the court erred in receiving in evidence certain bottles containing liquor. These bottles it appeared were procured upon a search warrant, which was served three days after the date of the sales complained of,

and after the time when the nuisance was alleged to have existed. This evidence was offered to prove that liquors were kept in the place. There was no dispute upon the question that the liquors were kept there for sale, and it follows that, if it was error to receive the evidence, the error was not prejudicial.

Appellant argues two or three other questions, but these were questions of fact for the jury, and the findings thereon are clearly supported by the evidence.

We find no error, and the judgment is therefore affirmed.

DUNBAR, C. J., PARKER, FULLERTON, and GOSE, JJ., concur.